Green, J.
delivered the opinion of the court.
This is an action to recover the value of a negro man, slave, that was hired by the defendant in error to the plaintiff in error, and was drowned while in the service of said plaintiff in error. There are three counts in the declaration; the first count alleges that Branch hired his negro man, Isaac, to Horsely for the term of twelve months, and that the defendant undertook and agreed that said negro slave should “not be put and caused to work and be employed in or about the water, so as to endanger his health and life:” breach, that said slave was not kept from in and about the water, by reason whereof he was drowned and wholly lost to the plaintiff. The second count alleges that the defendant hired the negro man slave, Isaac, the property of the plaintiff, for twelve months, and that the defendant, contrary to his duty, took such bad care of the negro, Isaac, that he became lost to *203 the plaintiff. The third is a common count in trover for the T negro man, Isaac.
The plaintiff proved by T. M. Branch and James G. Branch, that the contract of hiring was, that Isaac “was not to work in or about the water, but that defendant agreed to employ him in cutting and hauling saw-logs and on his farm.” He also proved by Charles Burke, who was in the employment of the defendant the year Isaac was there, that some time before Isaac was drowned, he went .up the river for a raft of saw-logs and came down in a canoe before the logs, the water being deep in many places. Isaac was also engaged in taking gravel to the mill-dam in a canoe and was once turned over when so engaged, and was drawn out of the river by witness. Many other witnesses proved that Isaac was employed in taking gravel to the dam in a canoe. Several witnesses proved' that the plaintiff stated to the defendant, as a reason why he did not wish the negro to be employed about the water, that he was subject to the rheumatism, and could not swim. Jesse Dean, proved that he was in the employment of the defendant the year Isaac was hired by him; that the defendant told him to take the boy, Isaac, and a negro boy, Merritt,, and go early next morning across the fiver to the mill and' put plank in a kiln to dry. The defendant lived on one side of the river and the mills were on the other. Witness started about day-light. They were in the habit of crossing the river above the dam in a canoe. There were two landings, one higher up than the place from which they started. They found the canoe at the lower landing about thirty or thirty-five feet above the dam. They could safely pass from that landing by going a little up by the bank and then striking across. This had often been done. There was a rise in the river; the water run upon the dam about half way up his thigh. The dam was lower at the middle than at either side. Merritt was a skilful paddler. Witness first entered the boat, then the boy, Merritt, and lastly the negro, Isaac, who pushed the canoe from the bank, and in doing so, instead of pushing off in the usual way, threw the end round so as to turn the bow and place the boat too far out. in the stream, and before the boy Merritt could right her, it was found she would go, *204 over the dam. The dam was about eight feet high, and the curren^ very dangerous. When they discovered the yrould go over, witness told the negroes to jump out. They au ¿[id g0. Witness and Merritt walked out on the dam. The foot of negro, Isaac, slipped when he struck the dam, and he went over and floated down a short distance and got on a sand bar. The water was up to the breast. Witness called to Isaac to stand where he was and he would go to him and take him out. After standing a while he seemed' to'slip off, paddled with his hands, and sunk in a few feet of the bank and was drowned. The foregoing is substantially the proof in the cause, and the bill of exceptions certifies that it. contains all the testimony.
The court charged the jury upon the first count, that they were to consider whether any special contract was made or not between the parties. If the negro belonged to the plaintiff, and Horsely hired him from the plaintiff, it was competent for them to make their own contract or bargain, and if they made such special contract, Horsely would have no other right than such contract conferred, and if he used the negro in a manner different from that pointed out in the contract it would be at his own risk, because in hiring, the owner of the. negro may limit the power of the hirer, and if the hirer, ap.-propriates the property hired in a manner different from that pointed out in the contract and it should be lost, it is just and right that the hirer should lose it, because it is as though no contract were made between them, the consent of the owner being wanting to the act. The jury should consider whether there was any such contract, and whether the defendant misapplied the negro; if so, he was liable if the negro was lost. The jury must therefore look to the proof and see if there was a special contract as stated; if there was, and the defendant used the negro in a way the contract did not authorize., and the negro was lost, it would be his loss and not the plaintiff’s. The charge of the court on the second count, was satisfactory to both parties.
After stating the substance of the third count, and explaining the nature of the action of trover, the court remarked to the jury in substance: “To come to a correct conclusion on *205 this count, you must again advert to the proof and see whether there was a special contract between the parties. If contract was a general one, the hirer is, in law, the temporary owner, and trover will not lie for mere neglect or abuse of the thing hired; but if there was a special contract, and if' the defendant used the negro in a manner different from the terms of the contract, trover will lie, because such act of the hirer would be an illegal assumption of ownership, and would be a conversion in law. Whether there was such a contract and breach you must determine from the evidence. If there was, you must, under this count, find for the plaintiff and assess his damages; if there was not, then, so far as this count is concerned, you must find for the defendant. If the jury should believe there was a special contract, and a breach thereof by the defendant, then the defendant would be guilty of a conversion and liable in trover, even though the jury should believe the negro was lost subsequent to such violation of the contract, and under circumstances which would not be a violation of the contract, unless the jury believed the plaintiff waived the violation of the contract, of which the jury must be the judges from the- testimony in the cause. It would be competent for the plaintiff to waive any particular breach of the contract, and not the benefit of the contract generally. Whether he did or not, it is for you to determine 'from the proof.”
The jury found a verdict for the plaintiff-upon the first-count, and assessed his damages to one thousand dollars, and a verdict for the. defendant upon the second and third counts.^ The defendant moved for a new trial, which was refused, and judgment rendered for the plaintiff, to reverse which this ap-. peal in error is brought..
1. The first and. principal question is, whether the evidence, applicable to the first, count of this declaration warranted the jury in finding a verdict upon that count. This count; states a special contract of hiring and an application of tlm property in a manner different from that agreed on, whereby the negro was drowned and lost to the plaintiff. The agree-, ment proved corresponds substantially with that stated. It. was that “Isaac was not to work in or about the water, but. *206 that he was to be employed m cutting and hauling saw-logs , , „ .. and on the farm.”
The house of Iiorsely was on one side of the river and the mills on the other. As, by the special contract thus proved, Isaac was to “be employed in cutting and hauling saw-logs” it is manifest that h^ must be much about the mills and on the other side of the river opposite the house of the defendant. A fair construction of the contract, therefore, did not forbid his crossing the river and being about the water so as to accomplish that object.
The- proof is, that Isaac, with two other hands, were sent across the river to the mills, to be employed there in labor conformable to the contract, and while thus crossing Isaac was drowned. Upon this count of the declaration, the question whether, in the swollen state of the- river, an attempt to cross in thirty feet of the dam, when the water was. running three or four feet deep over it, and drawing the canoe in which Isaac was, with a rapid current to its centre, which was lower than the end, was not culpable rashness and negligence, is not presented, nor could it properly have been considered by the jury. It may be questionable whether this evidence as to the manner of crossing the river, which is properly referable to the second count in the declaration, would not have authorized a verdict on that count, especially as the defendant knew Isaac could not swim. But, as crossing the river was not a violation of the special agreement, there .could be no recovery upon the first count for a loss which happened while thus crossing. It is true, there is evidence that Isaac had, previously to the day on which he was drowned, been employed in work in and about the water. But in this misapplication of the. negro no injury occurred; and to authorize a recovery on this first count, it must not only be shown that the property hired had been misapplied, but that in such misapplication it was injured, whereby the uplaintiff sustained damages. The fact that the contract had violated would not authorize, a recovery on this count if the property were subsequently injured or destroyed by inevitable accident. The injury must occur in the very act of misapplication. We have seen that the attempt to send *207 Isaac across’the river at the time he was drowned was not a misapplication of the property, and therefore not a of the contract stated in the first count. We think too, his honor, in charging the jury upon the first count, was not sufficiently explicit upon this point. In the conclusion of a very clear and correct statement of the law upon this count he said the jury should consider whether the defendant applied “the negro, if so, he was liable if the negro was lost.” The jury might possibly have thought that the court meant to say, that if the negro had been misapplied, although he was afterwards lost, the defendant was liable. This was not the meaning of the court, nor is it the law. But the jury either confounded the charge upon the first and third counts, or they misconstrued the contract, supposing crossing the river to have been a violation of it, otherwise they could not have placed their finding upon the first count. For, according to what we think is the plain meaning of the contract, the first count is the only one, from the evidence in this record, upon which the jury might not have been sustained in finding for the plaintiff. If crossing the river was not a violation of the contract, there is no evidence to support this verdict. It is the result of a total misapplication of the proof, and must be set aside and a new trial awarded.
2. Upon the second count the charge of the court is not excepted to. Upon this count the defendant is liable for neglect or abuse of the property hired. It was for the jury to determine whether the attempt to cross the river, as proved by Dean, under the circumstances, was a violation of the defendant’s duty to take due and proper^ care of the negro’s health aud life.
3. The counsel for the plaintiff in error insists that these counts in case will not lie, and for this position they cite the case of Wheelock vs. Wheelright, 5 Mass. 104.
In that case there was but one count in the declaration. The plaintiff declared in case for carelessly and immoderately driving his horse, The facts, according to the case agreed, were, that the defendant had hired the horse for a special purs pose, to go to a particular place, and to return at an hou¿ fixed in the contract. But he drove the horse to a difieren! *208 place, and did not return until long after the time fixed in the contract. The court very properly decided that, according ^ factSj the plaintiff had misconceived his action. For ri¿¡ng the horse to a different place than the one agreed on, he had violated his contract and had been guilty of a conversion of the properly, for which he was liable in trover and notin case. But the court never thought of deciding that counts in case might not be well joined with a count in tro-ver. The contrary is too well settled to require discussion here.
4. It is next insisted that the first count is bad, and that the judgment ought to have been arrested. It is unnecessary to enter upon an examination of the authorities upon this point. It is enough to say, that although somewhat inartifi-cial, and possibly bad on demurrer, still there is no defect that would not be cured by a verdict.
5. Exception is taken to the charge of the court upon the third count because his honor said, “if the jury should believe there was a special contract and a breach thereof by the defendant, then the defendant would be guilty of a conversion and liable in trover, even though the jury should believe the negro was lost subsequent to such violation of the contract, and under circumstances which would not be a violation of the contract.” This part of the charge is in strict con. formity to the opinion of this court in the case of Angus vs. Dickinson, Meigs’ Rep. 460.
This doctrine is founded upon reasons which cannot be controverted. Whenever the hirer, who has made a special contract, violates that contract by a misapplication of the property hired, having no authority by his contract so to apply the property, it is the same thing, so far as that use the property is concerned, as though there were no contract,} and the party had-, without the semblance of authority, as-' Sumed the ownership and control of another man’s property. Being thus guilty of a conversion of the property, he is instantly liable to an action of trover for its value. Tt is there-manifest that the plaintiff’s right to a recovery being ¿complete, cannot be affected by any question as to the subsequent loss of the property. It is supposed this liability would *209 not exist in the case of a negro who had been hired for a year, because it is said the hirer would not have a right of possession until the end of the year, and therefore could not, until then, maintain trover, and that he would then be bound to receive the negro if delivered. In support of this position the case of Caldwell vs. Cowen, 9 Yer. 262, is cited. That was a case where the property had been taken out of the possession of the hirer by a third person. The court said that the general owner, not being entitled to possession; could not maintain trover against such third person who had been guilty of the conversion. But the present case is wholly different: here the hirer himself is guilty of the conversion; having made the property his own, and by his violation of the contract having put an end to it, he is instantly liable to the action of the owner. We think, therefore, the'entire charge on the third count is correct;
Let the judgment be reversed, and the cause be remanded to the circuit court of Maury county for another trial to be had therein.